IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID WALTER and HELEN WALTER,  )
           Plaintiffs,         )
                             )
      vs.                   )      Civil Action No. 09-420
                             )
THE UNITED STATES OF AMERICA,  )
           Defendant.        )
                           )

<u>MEMORANDUM OPINION</u>

Currently before the Court are cross-motions for summary judgment. For the reasons that follow, the motion for summary judgment submitted on behalf of Plaintiffs (Docket No. 17) will be granted and the motion for summary judgment submitted on behalf of Defendant United States of America (Docket No. 19) will be denied.

Plaintiffs, David Walter and his wife Helen Walter, bring this action against the United States of America pursuant to 28 U.S.C. § 1346(a)(1), seeking to recover federal income taxes for tax year 2002 in the amount of $5,670 that were overpaid yet not refunded by the Internal Revenue Service (IRS). The United States opposes the refund on the ground that the statute of limitations for requesting it has expired.

<u>Facts</u>[1]

Prior to the 2002 tax year, David Walter prepared Plaintiffs' joint federal income tax returns, Helen Walter reviewed them, and the Plaintiffs signed and filed those tax returns. David Walter originally prepared paper returns and mailed them to the IRS. In the years leading up to the 2002 tax year, he prepared the returns electronically using the computer program "Quicken,"

---

[1] Except where otherwise indicated, these facts are stipulated to by the parties in their joint stipulation of undisputed facts (Docket No. 16).

and Plaintiffs submitted them online.

For the 2002 tax year, David Walter made two estimated tax payments of $4,939: one in the first quarter of 2002 and one in the second quarter of 2002.  Both payments were made from a bank account at Dollar Bank in his name only.  Plaintiffs did not make any additional estimated tax payments for the 2002 tax year.  In the beginning of 2003, David Walter prepared Plaintiffs' federal income tax return for the 2002 tax year using Quicken.  After David Walter completed the 2002 federal income tax return, Helen Walter reviewed it, and Plaintiffs filed it electronically using Quicken.

Plaintiffs' 2002 federal income tax return was rejected by the IRS because it contained an inaccurate social security number.  David Walter corrected this error and attempted to electronically resubmit the joint 2002 federal income tax return to the IRS.  Unlike previous years, David Walter did not get a message acknowledging that the 2002 federal income tax return had been accepted and filed.  Although David Walter knew that the 2002 federal income tax return had not been accepted and filed, he took no further steps to deal with the situation.

In 2004, David Walter prepared a federal income tax return for the 2003 tax year that claimed credit for the refund that Plaintiffs had requested on the return that they had attempted to file for the 2002 tax year.  Plaintiffs' 2003 federal income tax return was rejected by the IRS.  At that point David Walter became angry and decided not to file a federal income tax return or pay any federal income taxes for the 2003 tax year.  See also D. Walter Dep. at 28.[2]

David Walter did not file federal income tax returns or pay federal income taxes for the 2003, 2004, and 2005 tax years.  The IRS sent Plaintiffs notices of deficiency for the 2002, 2003,

---

[2]      Def.'s Br. (Docket No. 20) Ex. A.

2004, and 2005 tax years, which they ignored.  On June 20, 2005, the IRS sent David Walter a notice of levy.  He ignored that notice.

In February 2006, the IRS began to levy on dividends that David Walter received on the stocks held in his Morgan Stanley account to satisfy Plaintiffs' estimated deficiency for the 2002 tax year.  With respect to the 2002 tax year, the IRS has since returned all the funds that it levied.

David Groetsch, David Walter's broker at Morgan Stanley, repeatedly told David Walter that he needed to get help to resolve his problems with the IRS.  Groetsch recommended that Plaintiffs hire attorney James Carney to prepare their delinquent returns.  For a number of months, David Walter took no action on David Groetsch's recommendation.  In November 2006, David Walter followed David Groetsch's recommendations and enlisted the help of James Carney to deal with his problems with the IRS.

In November 2006, following a telephone conversation with David Walter, Carney met with David and Helen Walter at the Walters' home.  Carney sent the Walters a letter agreement explaining how he would proceed to represent them.  David Walter read the letter, understood its terms, and he and Helen Walter signed it.  In addition, Plaintiffs signed the power of attorney form that the IRS requires.  See also D. Walter Dep. at 38-39; Docket No. 20 Ex. B.

Carney took charge of preparing the Walters' state and federal income tax returns for the 2002 tax year and subsequent tax years.[3]  He also took charge of getting records of the Walters' income from their broker, their banks, David Walter's employer, and companies in which David

---

[3]     Plaintiffs have submitted an affidavit by David Walter as an attachment to their motion for summary judgment (Docket No. 17 Ex. C.)  He states that, when he and his wife first met with James Carney, they told him that they had not filed federal or state income tax returns for 2002 through 2005.  (Walter Aff. ¶ 5.)

Walter owned stock.  Carney wrote letters requesting those records, which David Walter signed.
David Walter also went to a former employer to obtain some records.

In June 2007, Carney filed the Walters' federal income tax return for the 2002 tax year.
This return showed three estimated tax payments of $4,939.  In September 2007, Carney refiled
the Plaintiffs' 2002 federal income tax return at the request of the IRS.  The Plaintiffs' 2002
federal income tax return requested a refund of $10,609.  However, the Walters would only have
been entitled to a $5,670 refund had the 2002 return been timely filed because they had made
only two estimated tax payments of $4,939 rather than three such payments.

From January 2000 (and likely earlier) to November 2006 when Carney became involved,
the only people authorized to act on Plaintiffs' behalf with respect to financial affairs were: (1)
David Walter, who was authorized to handle Helen Walter's financial affairs during this time;
and (2) David Groetsch, who was authorized to execute transactions, as instructed by David
Walter, on his account at Morgan Stanley during this time.  Carney was authorized to act on
Plaintiffs' behalf with respect to preparing and filing federal and state income tax returns
beginning in November 2006 and continuing to the present.  Pursuant to such authority, Carney
has prepared federal and state income tax returns for the Plaintiffs for the years 2002 through
2008.  Neither David nor Helen Walter has ever had a guardian appointed for him or her.

On January 23, 2008, the IRS sent the Walters a letter denying their claim for a refund of
$5,670 for the 2002 tax year because the return had been filed more than three years after its
April 15, 2003 due date.  Carney filed a timely appeal of the denial of the claim for refund.  As
part of that appeal, the Walters provided a letter from their family physician, Dr. Vincent
Balestrino.  The IRS never ruled on this appeal.

The Walters petitioned the Tax Court to redetermine the notices of deficiency for the 2003 and 2004 tax years. Those cases in Tax Court were resolved with a stipulated decision.

Carney then filed the complaint in the instant tax refund suit. The Walters had paid their federal tax liability for the 2002 tax year in full in 2002, prior to filing the instant tax refund suit. The Walters did not pay either their 2003 or 2004 federal tax liability in full prior to filing the instant suit. Following the resolution of the Tax Court cases but after the instant suit was filed, the IRS collected the amounts of principal, penalties, and interest due for the 2003 and 2004 tax years.

Helen Walter is 71 years old. She has suffered from Stiff Person's Syndrome for at least seven years. She has also suffered from depression for at least seven years. She has also suffered from short-term and long-term memory loss for a number of years.

David Walter is 72 years old. He has suffered from extreme clinical depression for at least seven years. He also suffers from diabetes.

David Walter was by training a design engineer. After he lost his job at Matthews International in 1996 because of frequent absences from work to take care of Helen Walter, he found employment as a school bus driver. David Walter was employed as a school bus driver by the Penn Hills School District from 1996 through 2006, when he was forced to quit in part because of his diabetes. During this time, he worked five days a week, four hours a day. He drove to work each day. Throughout that time, he held a commercial driver's license, which he continues to hold today. David Walter keeps his commercial driver's license because he says that it was easier to keep that license than to revert to a regular license.

David Walter earned a total of $11,790 as a school bus driver in 2002. He opens the mail

every two to three days.  He pays his and his wife's bills online using Quicken, including bills for

his credit cards, his wife's credit card, gas, electric, phone, television, utilities, his and his wife's

doctor, his and wife's attorney, and his use of the Quicken program.  Quicken does not pay bills

automatically.  Rather, David Walter receives bills via U.S. mail, opens them, enters the bill into

the Quicken program, enters the amount to pay, then enters a password to submit the payment.

He has paid his bills in this manner for more than a decade.  He does not have to do any

calculations to pay the bills using Quicken.

   Although David Walter does pay some bills on time (i.e., within a month of receipt), he

normally pays his bills one to two months late, and as much as three months late.  He often

delays paying bills until he gets second or third notices and/or threats to shut off electricity and

often incurs late charges.  When he enters a bill into Quicken, it provides him with an estimated

date that the payment will be delivered to the creditor.  Based on the estimated payment date, he

will sometimes go to the Post Office and submit the payment via U.S. mail instead of using

Quicken so that the bill is paid sooner.

   None of the Walters' utilities have ever been shut off as a result of late payments.  Some

of David Walter's credit cards have been "shut off" for failure to make payments.  When his

credit cards are "shut off," David Walter pays the credit card bills to reactivate the credit cards.

At his deposition, Walter stated that "I just procrastinate.  I hate paying out money."  (D. Walter

Dep. at 36.)

   David Walter has investments that consist of bonds, equities, and a trust fund for his

grandchildren's education.  His investments are held by David Groetsch, Walter's broker at

Morgan Stanley, who speaks with David Walter every one to three months.  Groetsch makes two

types of transactions for Walter: (1) selling investments to raise cash, which Groetsch initiates at Walter's request; and (2) purchasing investments, which Groetsch recommends and Walter accepts.  Since Walter's retirement from his job as a school bus driver, most of the transactions have involved selling investments.  Before making any transaction, Groetsch always consults with Walter, explains the proposed transaction, and obtains Walter's approval.

David Walter has a bank account at Dollar Bank.  At least once a week, he goes to an ATM and withdraws cash.  He also deposits checks using an ATM, including checks he receives from his broker.  His pension check and the Walters' Social Security checks are deposited automatically into his checking account.  He writes checks from his bank account to pay some of his daughter's bills.

David Walter has handled all the household finances for him and his wife since approximately 1979.  He pays all their household bills from the bank account at Dollar Bank in his name.  Helen Walter has separate money in a bank account at National Bank in both their names.  David Walter withdraws money from that account to pay for their vacations and for her to play bingo.  Helen Walter does not go shopping alone; David Walter, Helen Walter's daughter, or Helen Walter's sister takes her shopping.  When David Walter takes Helen Walter shopping, he pays for her purchases.  When her daughter or sister take her shopping, they charge her purchases to a credit card in her name; David Walter then pays that credit card bill using Quicken.

During the period 1996 through 2006 when he worked as a school bus driver, David Walter signed and filed tax returns for the Penn Hills School District/Municipality, consisting of a statement verifying that he had earned the amount of wages shown on the statement and had

taxes withheld from his pay. In addition, David Walter continued to pay many township, county, and school district/municipality real estate taxes, although he did not pay all of those taxes.[4]

David Walter drives to the grocery store to buy food for him and his wife one to three times per week. He can do arithmetic in his head, such as subtracting 62 from 71, but it takes him a while to do the calculation. He has a telephone answering service which he checks every two to three days; he returns most, but not all, of his phone calls. For example, he frequently does not return Carney's phone calls immediately because (a) he already knows what Carney wants; and/or (b) he thinks that Carney is going to "chew him out." He does not use email because he has forgotten the password to his email account.

Procedural History

Plaintiffs filed this action on April 9, 2009. The complaint asserts jurisdiction pursuant to 28 U.S.C. § 1346(a)(1) and seeks: 1) an order requiring the IRS to grant the refund in the amount of $5670; 2) an order requiring the IRS to apply this refund first to the underpayment of taxes for 2003 and 2004;[5] 3) an order requiring the IRS to eradicate the assessment of penalties and interest for such years; 4) an order requiring the IRS to refund the balance of the 2002 refund with interest; 5) an award of attorney's fees; and 6) an award of costs.

On October 31, 2009, the parties filed cross-motions for summary judgment.

---

[4]     David Walter states in his affidavit that, in the spring of 2009, he had "bills for several years of unpaid real property taxes from Allegheny County, Penn Hills Township and Penn Hills School District. Allegheny County had initiated court proceedings. James Carney helped me resolve these problems." (Walter Aff. ¶ 6.)

[5]     In their motion for summary judgment, Plaintiffs request permission to amend the complaint to include tax years 2005 and 2006.

Standard of Review

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Woodside v. School Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001) (quoting Foehl v. United States, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted)). In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Doe v. County of Centre, Pa, 242 F.3d 437, 446 (3d Cir. 2001); Woodside, 248 F.3d at 130; Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'–that is, pointing out to the District Court–that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Supreme Court recently reiterated that:

> A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. 28 U.S.C. § 1346(a)(1); EC Term of Years Trust v. United States, 550 U.S. 429, ----, and n. 2, 127 S.Ct. 1763, 1766 n. 2, 167 L.Ed.2d 729 (2007). The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code. United States v. Dalm, 494 U.S. 596, 609-610, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). That scheme provides that a claim for a

refund must be filed with the Internal Revenue Service before suit can be brought, and establishes strict timeframes for filing such a claim.

United States v. Clintwood Elkhorn Min. Co., 128 S.Ct. 1511, 1514 (2008).  Specifically, section

7422(a) provides that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the [IRS].

26 U.S.C. § 7422(a).

Statute of Limitations for Tax Refunds

Internal Revenue Code section 6511 provides that:

> (a) Period of limitation on filing claim.--Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.
>
> (b) Limitation on allowance of credits and refunds.--
>
>> (1) Filing of claim within prescribed period.--No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.
>>
>> (2) Limit on amount of credit or refund.--
>>
>> (A) Limit where claim filed within 3-year period.--If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required

to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

(B) Limit where claim not filed within 3-year period.--If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

(C) Limit if no claim filed.--If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed.

26 U.S.C. § 6511(a-b).  "Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any court."  Dalm, 494 U.S. at 602 (citation omitted).  A tax return that claims a refund is considered a "claim" for purposes of § 6511.  26 C.F.R. § 301-6402-3(a)(1, 5), (c).

<u>2002 Tax Year</u>

Plaintiffs' tax return for the 2002 tax year claimed a refund and is thus governed by the limitations period contained in § 6511(b).  The United States concedes that, if Plaintiffs had filed the return on time, they would have been entitled to a refund of $5,670.  (Joint Stip. ¶ 27.) However, Plaintiffs did not file the return until June 2007, more than four years after it was due on April 15, 2003.  Section 6511(b) limits the refund claim to the amount of tax that they paid in the immediately preceding three years, or the time between June 2004 and June 2007. § 6511(b)(2)(A).  Since Plaintiffs did not pay any taxes during that time, they are not entitled to a refund unless they can establish an exception to the limitations period imposed by § 6511(b).

11

Section 6511(h) provides that:

(1) In general.--In the case of an individual, the running of the periods specified in subsections (a), (b), and (c) shall be suspended during any period of such individual's life that such individual is financially disabled.

(2) Financially disabled.--

> (A) In general.--For purposes of paragraph (1), an individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require.

> (B) Exception where individual has guardian, etc.--An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters.

§ 6511(h).[6]

Revenue Procedure 99-21 "sets forth in detail the 'form and manner' in which proof of financial disability must be provided."  Bova v. United States, 80 Fed. Cl. 449, 455 (Fed. Cl. 2008).  The procedure provides that the following statements are to be submitted with a claim for credit or refund of tax to claim financial disability for purposes of § 6511(h):

(1) a written statement by a physician (as defined in § 1861(r)(1) of the Social Security Act, 42 U.S.C. § 1395x(r)), qualified to make the determination, that sets forth:

> (a) the name and a description of the taxpayer's physical or mental

---

[6]     Congress added § 6511(h) in 1998 in response to the Supreme Court's opinion in United States v. Brockamp, 519 U.S. 347 (1997), where the Court concluded that Congress did not intend to allow equitable considerations, such as the existence of a mental disability, to affect § 6511's time limitations.  See Brosi v. Comm'r, 120 T.C. 5, 12 n.6 (2003).

impairment;

(b) the physician's medical opinion that the physical or mental impairment prevented the taxpayer from managing the taxpayer's financial affairs;

(c) the physician's medical opinion that the physical or mental impairment was or can be expected to result in death, or that it has lasted (or can be expected to last) for a continuous period of not less than 12 months;

(d) to the best of the physician's knowledge, the specific time period during which the taxpayer was prevented by such physical or mental impairment from managing the taxpayer's financial affairs; and

(e) the following certification, signed by the physician:

I hereby certify that, to the best of my knowledge and belief, the above representations are true, correct, and complete.

(2) A written statement by the person signing the claim for credit or refund that no person, including the taxpayer's spouse, was authorized to act on behalf of the taxpayer in financial matters during the period described in paragraph (1)(d) of this section. Alternatively, if a person was authorized to act on behalf of the taxpayer in financial matters during any part of the period described in paragraph (1)(d), the beginning and ending dates of the period of time the person was so authorized.

Rev. Proc. 99-21, 1999-1 C.B. 960.

In conjunction with their claim for a refund, the Walters submitted a statement from their

physician, Dr. Vincent Balestrino, dated March 1, 2008.  Dr. Balestrino stated as follows:

This is to advise that I have been the family physician for [the Walters] for over fifteen years. Both of them suffer from extremely severe physical and emotional conditions.

Helen suffers from Stiff person's Syndrome which is an extremely rare neurological disease.  This disease is progressive in nature.  There is no cure for the disease.  Typically, as in Helen's case, the disease results in increasing inability for the afflicted person to control their muscles and take physical actions. The disease has resulted in Helen being wheelchair dependent for the last several years.  The disease is often accompanied by depression although it is not clear where such depression is caused in a biological standpoint by the disease or whether it is the result of the suffering incurred by ... her affliction.  This

depression has been extremely severe in Helen's case.  In addition, Helen has suffered for a number of years from short term memory loss which along with the depression precludes her functioning in the manner that one would expect for a healthy individual of her age.  Indeed, she cannot be left alone by David and accordingly goes to an adult day care center two or three days a week.

David suffers from diabetes.  More importantly, he suffers from extreme clinical depression.  It is probable that the clinical depression was set off by his own physical condition, the difficulties in caring for someone who is an invalid, and overall family problems stemming from the fact that the couple's daughter has gone through bankruptcy and has been forced to live with them (along with two minor children) for several years.  In his case the depression results in inertia which often prevents him from performing the simplest everyday tasks such as answering the telephone.

In the case of each patient, all of the above conditions have existed for the last six years (and many of them have existed for a longer period of time.)  None of these conditions can be cured; rather they will continue to grow worse as time goes on.

It is my understanding from talking to David that prior to 2001 he had been doing and filing his own income tax returns using Turbo Tax.  In 2002, he prepared a tax return but was unable to file it [due] to a computer problem.  Once baffled by the computer problem, he did not take any further steps to file the return by sending in a paper return or attempting to file again by computer.  Although aware of the need to file tax returns, he made no attempts in the following years to file returns but simply avoided the subject.  He ignored (took no action on) various letters the IRS [sent] dealing with the failure to file.  He told his broker about the situation and was repeatedly advised to take some action to file returns but he did nothing.  Ultimately, his broker retained an[] attorney to assist David and the attorney has in essence prepared the missing returns.

It is my medical opinion, with a reasonable degree of medical certainty, that the above course of conduct by David and his failure to file returns from 2002 onwards (until someone else took over the responsibility for him) was a result of his clinical depression.  Indeed, completely giving up on a problem and avoiding it is a frequent reaction of someone suffering from clinical depression if that person encounters frustrations in any initial effort to do something.

It is my further medical opinion, with a reasonable degree of medical certainty that Helen has lacked for a good ten years or more either the mental capacity or physical ability to handle any financial matters, let alone something as relatively complicated as completing income tax returns.

14

(Docket No. 17 Ex. A.)

On November 3, 2009, Dr. Balestrino wrote the following letter, which Plaintiffs have

submitted as a supplemental exhibit to their motion:

> This letter is to clarify my earlier letter from March 1, 2008 in regards to
> David A. Walter.
>
> It is my medical opinion, with a reasonable degree of medical certainty
> that Mr. Walter has lacked since 2002 the mental capacity to handle financial
> affairs (possessed by a normal person), let alone do something as relatively
> complicated as completing and filing income tax returns.
>
> This letter is also to certify that the statements contained in my letter of
> March 1, 2008 and this letter are true and correct to the best of my knowledge,
> information and belief.

(Pl.'s Supp. Ex. 1.)[7]

The United States contends that: 1) Dr. Balestrino's initial statement was insufficient

because it did not state that David Walter was incapable of managing his financial affairs and it

did not include the required certification; 2) Plaintiffs cannot remedy this defect by submitting

Dr. Balestrino's supplemental statement because they never submitted it to the IRS; 3) the facts

of record demonstrate that David Walter was able to and did manage his financial affairs during

the relevant time period; and 4) because David Walter was authorized to act and did act on Helen

Walter's behalf in her financial matters, she is not financially disabled either.

Plaintiffs argue that: 1) the phrase "managing the taxpayer's financial affairs" is not

defined by Congress or the IRS, but the purpose of the law is clearly to protect taxpayers who are

unable by reason of physical or mental impairment to file their income tax returns in the timely

manner required by statute; 2) it is undisputed Helen Walter is incapable of managing her

---

[7]       Docket No. 21.

financial affairs and the issue is whether David Walter was capable of managing her financial affairs for her since 2002; 3) David Walter had the ability to manage his financial affairs for many years, but in 2002 he lost that ability because of his depression, as Dr. Balestrino attests and David Walter corroborates; and 4) the record indicates that David Walter's depression also affects his general ability to pay his bills, manage his assets and communicate promptly with outside parties.

      Strict Compliance with Revenue Procedure

      The United States contends that strict compliance with Revenue Procedure 99-21 is required and that, absent such compliance, a court cannot make a finding of financial disability under § 6511(h). However, the cases cited by the United States do not resemble this case. In many of them, no physician statement was submitted at all. See Perkins v. Comm'r, 2008 WL 4977439, at *2-3 (Tax Ct. Nov. 20, 2008); Glover v. United States, 2005 WL 1926614, at *2 (E.D. Mich. July 11, 2005) (no statement submitted, court held hearing at which plaintiff failed to demonstrate that he met the tolling requirements); Bhattacharyya v. United States, 2005 WL 608269, at *3 (D. Or. Mar. 16, 2005) (no physician statement discussed or apparently submitted, complaint alleged only that plaintiff suffered from high blood sugar and was required to stay out of work for 60 days. See also Ibeagwa v. United States, 2009 WL 3172165, at *4 (N.D. Ill. Sep. 30, 2009) (plaintiff submitted an optometrist's statement that his vision problem was correctable which made no comment on his ability to manage his financial affairs); Green v. Comm'r, 2009 WL 1392625, at *3 & n.3 (Tax Ct. May 19, 2009) (plaintiff submitted a letter from a clinical psychologist, but they are not recognized as "physicians" under 42 U.S.C. § 1495x(r)); Henry v. United States, 2006 WL 3780878, at *4 (N.D. Tex. Dec. 26, 2006) (two statements were

submitted, but neither was from a treating physician and they stated only that it was "possible" the plaintiff could not manage her financial affairs).[8]  No case has ever held that a treating physician's statement that contains a technical deficiency that is easily corrected is insufficient under § 6511(h).  On the contrary, there is a doctrine of allowing informal refund claims that are "deficient merely in one or two of the technical requirements imposed by the Treasury regulation," Commissioner v. Ewing, 439 F.3d 1009, 1015 (9th Cir. 2006) (citation omitted).

In this case, the United States argues that Dr. Balestrino's letter contained two deficiencies: it did not state that David Walter's physical impairment prevented him from managing his financial affairs and it did not contain a certification.  However, the clear import of Dr. Balestrino's letter was that David Walter's clinical depression prevented him from managing his financial affairs: it stated, inter alia, that "the depression results in inertia which often prevents him from performing the simplest everyday tasks such as answering the telephone." The letter also provided no reason to conclude that Dr. Balestrino would not certify that he was giving a true, accurate and complete description of the Walters' condition.  To the extent the letter did not meet these technical requirements, these deficiencies were remedied by Dr. Balestrino's supplemental letter.  Moreover, the IRS did not reject Dr. Balestrino's letter.  Rather, it simply never addressed it.[9]

---

[8]    Two of the cases cited by the United States are completely inapposite:  Nunn v. United States, 2009 WL 260803, at*4 (W.D. Ky. Feb. 4, 2009), holds that incarcerated persons may not utilize § 6511(h), and Brosi v. Commissioner, 120 T.C. 5, 10-11 (2003), holds that a busy commercial pilot could not cite his responsibility to care for his disabled mother to invoke § 6511(h).

[9]    Plaintiffs have averred that the IRS lost the administrative file.  The United States has not denied this statement.

The United States cites no relevant authority to support its contention that Dr. Balestrino's supplemental letter cannot be considered because it was not presented to the IRS first.  It cites Dalm, 494 U.S. at 601-02, for the proposition that a refund claim must first be submitted to the IRS.  However, Plaintiffs did submit their refund claim to the IRS with Dr. Balestrino's letter.  Neither Dalm nor any other case holds that the taxpayer may not remedy a technical defect by submitting a supplemental letter, particularly when the IRS did not even reject the original letter.

The Court concludes that Plaintiffs have demonstrated that they substantially complied with Revenue Procedure 99-21 by providing Dr. Balestrino's letter and that they have cured any technical deficiencies by submitting the supplemental letter.  Therefore, the Court need not consider the parties' additional arguments that David Walter's deposition testimony demonstrates (according to Plaintiffs) or undermines (according to the United States) his claim of financial disability.  It is noted that the United States does not cite any medical evidence, but refers only to David Walter's deposition.[10]  Plaintiffs have complied with Revenue Procedure 99-21 and have demonstrated that they are entitled to the tolling provision of § 6511(h).

<u>Helen's Walter's Ability to Manage Her Financial Affairs</u>

The United States does not appear to dispute that Helen Walter suffers from severe physical and mental disabilities and that she is unable to manage her financial affairs by herself.  However, Helen Walter depends upon her husband, David Walter, to manage her financial

---

[10]   Ironically, the United States attempts to use David Walter's deposition testimony against him although this testimony did not exist at the time the IRS was presented with Plaintiffs' refund request accompanied by Dr. Balestrino's letter and although neither the statute nor the revenue procedure contemplates taking such depositions and using them in this manner.

affairs.  26 U.S.C. § 6511(h)(2)(B).  See Bova, 80 Fed. Cl. at 450-51.  Thus, this case turns upon David Walter's ability to manage his financial affairs.  As explained above, Plaintiffs have demonstrated that they substantially complied with Revenue Procedure 99-21 and the United States has not demonstrated otherwise.

2003 and 2004 Tax Years

The United States contends that Plaintiffs cannot recover any amounts for the 2003 and 2004 tax years because they did not pay their federal tax liability in full prior to bringing suit. Plaintiffs respond that if the IRS credits them with the overpayment of taxes they undisputedly made in the 2002 tax year, that amount is sufficient to cover the taxes owed (after withholding) for the following four years.  They note that the Stipulated Decision by the Tax Court recognizes that, if they prevail in recovering overpayments made in the 2002 tax year, they will be entitled to the refund of all monies seized with respect to years 2003 and 2004.  (Pl.'s Br. Ex. B at 2-3.)[11]

The Court of Appeals has stated that "the Supreme Court concluded that '§ 1346(a)(1), correctly construed, requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court.'"  Koss v. United States, 69 F.3d 705, 708 (3d Cir. 1995) (quoting Flora v. United States, 362 U.S. 145, 177 (1960)).

However, the record is undisputed that the IRS did collect the amounts of principal, penalties and interest due for the 2003 and 2004 tax years and that the Stipulated Decision issued by the Tax Court recognizes that, if the Plaintiffs demonstrate that they are entitled to credit for any 2002 tax payment, the amounts noted in the decision would be appropriately adjusted to reflect such credit or the taxpayer may seek a refund of such payments.  Thus, Plaintiffs have

---

[11]     Docket No. 18.

paid the amounts owed for the 2003 and 2004 tax years and are now seeking a refund from the amount they overpaid for tax year 2002.  Therefore, the IRS should refund to Plaintiffs the amount they overpaid for the 2002 tax year and follow the Stipulated Decision in adjusting the amounts for the 2003 and 2004 tax years.

    2005 and 2006 Tax Years

       The United States argues that Plaintiffs may not seek a refund for the 2005 and 2006 tax years for the same reason they cannot seek a refund for the 2003 and 2004 tax years.  It also argues that the complaint does not seek a refund for these tax years.  Plaintiffs argue that the absence of such a request will not prejudice the IRS and they ask that they be allowed to amend the complaint to request such relief.

       The IRS has not argued or demonstrated that it will suffer prejudice if Plaintiffs are permitted to amend the complaint and the same analysis applies to the 2005 and 2006 tax years as applies to the 2003 and 2004 tax years.  Therefore, Plaintiffs will be permitted to amend the complaint and the same relief will be applied with respect to the 2005 and 2006 tax years as applies to the 2003 and 2004 tax years.

 

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: December 16, 2009